We have five cases on our calendar this morning. One from the PTAB, one from the MSPB, two from the Court of Federal Claims, one of which is being submitted on the briefs and not argued, and another case from the District Court. The first case is the NOCO Company v. Shenzhen Carku Technology, 2022, 1646, and 1741. Good morning, Mr. Kostanius. Good morning, Judge Lurie, and may it please the Court. On NOCO's direct appeal, we present the Court with two questions of law. The first has to do with the Board's treatment of the Richardson reference and its change in claim construction between institution and final written decision. The second is the Board's construction of the fail-safe limitation, and in particular, its refusal to construe the term is not turned on when signals from said sensors indicate either the absence of a vehicle battery or improper polarity connection as not having a temporal element. Let me start with the Board's change in construction. In the institution decision in Appendix 532, the Board said that Carku had not made a sufficient showing that, quote, the power switch is turned on in response to a signal indicating presence of a vehicle battery because in Richardson, quote, there is no awareness of whether a vehicle battery is connected. In the final written decision, however, the Board protested and changed its mind and held that Richardson, in fact, had met that limitation even though Richardson had no awareness of whether a battery was connected. The Board in Appendix 60 to 61 said it had not construed Claim 1 in this fashion even though it had done exactly that. Well, you say exactly that. They didn't say they were doing a claim construction in the institution decision, did they? Well, they had done exactly that, Your Honor. NOCO had, in fact, relied on that construction in its patent owner response at Appendix 655 and Appendix 659, and, of course, it had to have done a construction in that regard. Did they call it a claim construction? They didn't call it a claim construction, but, of course, that had to have been the consequence because that was the reason that Richardson did not meet the language of the claim. Why shouldn't we just see this as the Board, over time, came to a greater, obviously different, or at least slightly different or arguably different understanding of Richardson and something they're permitted to do? The problem with that is, Your Honor, that it's not just a different understanding of Richardson, it's a different understanding of the claim. And the claim requires microprocessor knowledge. The microprocessor is the unit that has to have the knowledge. And that's what they said in the institution decision. And, in fact, if you are to take a look at the institution decision before the language talking about Richardson, at 532, where the awareness language is, you will see at page 526 of the institution decision, the Board says, talking strictly about the limitation in the patent, according to this limitation, the power switch can be turned on only in response to a signal indicating presence of a vehicle battery and a signal indicating proper polarity connection to that vehicle battery. And what the Board then said is that Richardson does not show that. And the reason that Richardson doesn't show that is that Richardson doesn't tell you that there's a battery connected. But they ultimately concluded that it did because the voltage level tells you whether there's a battery. The voltage level told a person of ordinary skill that there was a battery. The voltage level didn't tell the microprocessor that there was a battery. And, in fact, Richardson in two places says the contrary. Richardson at paragraph 41 tells, in fact, let me help you by actually pointing you to the language. At paragraph 41 of Richardson, there is a teaching. Where are we? This is at appendix 1950 at paragraph 41. 1915? 1950. And this is one of the teachings of Richardson. And this is something that happens after the start button is pressed. This is after the charging is going on here. So where are you reading on this page? This is at paragraph 41 at the bottom of the first column. If the system detects an increase in the difference between the measured jump starter battery voltage 20 and the voltage measured 30 across the contact relay 34, indicating that one of the jump starter cables has been disconnected. So Richardson is telling you there about a battery not being connected. But that's happening after power is flowing. That's Richardson talking about a disconnected battery. But that's not what the board is going to find. Well, that's exactly right because the board is talking about the step in figure 5, step 252, which is a voltage detection, which is talking about a battery being present, not about a battery being absent. When Richard is talking about a battery being absent, it's talking about it at paragraph 41. And there's another place in Richardson that talks about a battery being absent. And let me show that to you also. So if you follow figure 5 at step 252 and the vehicle volts are shown to be within the correct range and it says yes and you follow it to E, that circle E on appendix 1942, and then you follow that to figure 6 and then go to step 258 for manual or automatic mode, that then takes you to paragraph 49 on appendix 1951. And that tells you that if you're in manual mode, the jump starter 10 may be used when the battery voltage of the vehicle is below 10 volts or if the vehicle's battery is not connected. That's telling you that you can use the jump starter when the vehicle battery is not connected. That's exactly the opposite of the failsafe mechanism of the 015 patent. So what we have here is a board that in completely changing the construction read a completely inapposite patent onto our patent and invalidated our patent. This was a violation of our APA rights and at the very least we're entitled to a remand on this. But we do think that we're entitled to reversal because there is no evidence that under a correct construction that Richardson reads on our patent. If I can turn very quickly to the second issue here because I want to make sure to leave enough time to come back on, rebuttal to answer their cross-appeal as well, the Klang reference. Here the board misconstrued the failsafe limitation and basically read out the guts of our patent, read out the essential purpose of our patent. The board said that the failsafe limitation was really just another side of the same coin and not a distinct determination from the trigger limitation. They said that in Appendix 15. By doing that, the board read out the essential failsafe limitation. That was added and that was necessary for purposes of patentability. It's even in the title of the patent. It's all over the specification. Why did this matter with respect to the way Klang was read onto this patent? Klang is an old 2002 patent for a commercial diagnostic unit that was used by battery retailers. If you look at the schematic, the flow chart that's in Appendix 1962 but annotated at page 45 of our blue brief, it involves a series of steps that take a long period of time and the connection is made, but then there are a number of steps after steps 138 to 150 where the connection is made that are manually conducted by a human with the potential for delay, error, and changed circumstances. Some of those steps include taking a temperature. This could be hours that take place. There could be a disconnection that takes place and the starting takes place. It could be minutes, hours. It could be started at the beginning of the day and the starting could take place at the end of the day. The board said that when didn't really mean when. That was a construction error that read the failsafe limitation entirely out of this patent. The board said, well, that's okay because the 015 patent tolerates unplanned anomalies. Well, I'd submit to the court that unplanned anomalies are exactly what the failsafe limitation is designed to protect. The 015 patent says that inadvertent misconnections. Inadvertent, by the way, is another word for unplanned. Inadvertent misconnections, that's at A253, column 1, line 16 to 23. Potential for malfunctions, that's at A254, column 3, line 10. That's exactly what the failsafe limitation is designed to protect against. It's not designed to be perfect, but it's designed to protect against potential shocks, obviously potential fatalities, serious problems. This is a safety mechanism. When this construction is corrected, CARCU has offered no argument that anything in CLAGS satisfies the requirement that the power switch is not turned on when the signals indicate the absence of a battery or an improper polarity connection. Unless the court has further questions for me, I'll return on rebuttal on these two issues as well as my response to their Claim 11 arguments. We will save that time for you. Thank you, Your Honor. Mr. Pettario? Thank you very much. May it please the Court, my name is Kevin Pettario. I'm with Perkins Coie LLP here on behalf of the cross-appellant Shenzhen CARCU. I think there's a few things to try to cover here with respect to what was said with respect to, let's start with Richardson. There was a statement that was made by NOCO's counsel that the claim one requires microprocessor knowledge. I think we need to go back and take a look at what that limitation actually says. Limitation 1G says that the microcontroller has to be configured to receive signals from the sensors that, receive input signals from said vehicle isolation sensor and said reverse polarity sensor such that, and so that it responds to signals from the sensors indicating the presence of a vehicle battery at its said output port and the proper polarity connection or does not close a switch if the signals indicate a reverse polarity condition or lack of, or lack of correct, lack of a battery connection. And so this issue of trying to add what, add something about microprocessor knowledge is frankly a little bit confusing to me about and it seems to be adding some requirements that are not found in the claim. The board did not change its claim construction. In the institution decision, it followed a pretty formulaic way of laying out what was, what, how, whether or not each limitation was met. First it looked at the claim language and then recited what would be required in order to find that the claim language was met and then proceeded to analyze the references. And that's exactly what they did in the... Richardson itself doesn't disclose detecting battery absence but it provides for detection of a voltage level which indicates battery absence. Is that fair? That's right. So, I mean, in short, Richardson is in step 252 looking for a battery, is looking for a battery of a particular, within a particular voltage range that is selected by the user. For example, if the user selects to use a 12-volt battery with the device, it's looking for whether the voltage sensor 30 will return an indication that a battery within that range is present and connected to the device. So what the board is doing is combining Richardson with the knowledge of someone skilled in the arc. Is that what happened? I don't think that's correct. Claim, the paragraph 34 is indicating that what is happening in step 252 is a test to determine if a battery of a certain voltage has been connected. So the reference itself through the circuit schematics, and this is undisputed by the testimony of both experts, indicated that when no battery is connected, a voltage of approximately zero volts will be returned by the sensor. But Richardson doesn't say that, right? Well, through the circuit that is in there was... No, it provides the information, but Richardson doesn't say if the voltage is X level, that indicates the absence of a battery. That's correct. Not in text, but... You'd have to layer on to Richardson the knowledge of someone skilled in the arc who would read that signal that way. Who would understand the operation of the circuit and what it would output in both of those conditions. Yeah. But our position is that that is disclosed by the reference itself through disclosure of the circuits with all the component values that are provided. But in terms of claim construction, what happened in Appendix 526 for an explanation of the limitation referring to the action of the claim microcontroller where there's a statement that according to this limitation, the power switch can be turned on only in response to a signal indicating the presence of a vehicle battery and a signal indicating proper polarity connection to the vehicle battery. If a signal indicates absence of a vehicle battery or if a signal indicates improper polarity connection to the vehicle battery, the power switch cannot be turned on. That was an institution decision. It's basically a restatement of the plain order meaning of the claim limitation. And that same analysis or same summary of what that limitation required is repeated again in Appendix 526. So our position is that there was no change in the analysis of what is required in order to meet this limitation. Is there a change in how the board understood Richardson? I mean, I think across the entirety of this proceeding, there was development and understanding of Richardson. At the institution decision stage, there was a confusion about whether a voltage reading of the internal battery to show whether it was properly charged was a voltage reading of the vehicle battery and whether the shunt calibration routine was optional or mandatory. So I think the board's knowledge and understanding of this reference developed over the course of the trial with understanding of the full record and the full testimony of the experts that participated in the proceeding. And, again, I think the evidence that was cited by the board, again, indicated that there's substantial evidence to show that this limitation was met. And specifically, as we were mentioning a few minutes ago, that if a zero-volt signal is received at the microcontroller, the reason that that would happen is an example of one voltage that is outside the range is because the battery is disconnected. So the evidence that was cited by the board in this decision supported its finding that Richardson met limitation 1G. Just briefly with respect to claim, the NOCO's counsel indicated that there was somehow a reading out or ignoring of a claim limitation in order for the board to reach its decision. And that's simply not supported by the prosecution history and how the board applied this reference. The reason the second half of limitation 1G was added was to traverse a reference that would correct a polarity connection when an incorrect polarity connection existed. So to traverse that reference, the applicant had to make it clear that in response or if there's a condition of a reverse polarity connection that a switch would not close. And so that is the limitation that was added. The board didn't ignore this limitation in performing its analysis of whether the claim met all of the requirements of limitation 1G. Specifically, it looked at figure six of claim and said, well, if you've reached a switch closure, it is because or in response to a determination that a battery has been connected and connected with correct polarity. If you haven't done that, it's because if you don't get there, it's because those conditions haven't been met. That's all the claim requires. Yes. Let me turn to that now. I understand what the board said. It refused to look at the response and the reply because it said that you hadn't made your case in the petition sufficiently, right? That's right. So tell us why you think you made the case sufficiently in the petition. There's a lot more in the reply than there is in the petition. There is, but we do believe that the evidence that was presented in the petition was really not completely analyzed by the board. Either the board imposed requirements that were not requirements to establish a prima facie case of obviousness, or it misapprehended the evidence that was presented. The evidence that was presented was you could use a battery to charge another device, like a cell phone or something like that, but it doesn't show a USB port charging a battery, right? Well, the primary reference that was relied upon for that is appendix, it's originally exhibit 1012, which is reproduced at appendix 2099, and that reference shows a USB charging output, a charging cable, and where the other end of the cable is a micro USB port, and that reference also explains in text that what the other end of the micro USB port can be connected to is to charge cell phones, PDAs, or other electronic devices. Right, but it doesn't show it going the other way to charge a battery. Well, I think a cell phone does have a battery. You know, a PDA does have a battery, or other providing power to charge other devices indicates that a battery is there, but I agree with you that it does not show a cable that connects to the input of the jump starter device that is in the brochure. But the four, there are only really four statements, though, about the evidence that's cited there, and the issue, as your Honor pointed out, that it's not a dispute over whether, about the evidence presented by the patent owner or the evidence in reply, is what did the board do in response to the evidence that the petitioner presented? And there's really four things that they said. First, at appendix 93, they said Dr. Kirtley doesn't identify a charger having a USB charging input port, but that's not, you know, first of all, we just discussed why the, mentioned why the reference discloses that, and the other issue is that's not really required for a prime face of obviousness case. The other remaining sentences in appendix 93 to 94 talk about explaining why  and about whether the claim requires somehow that the output ports that are disclosed also have an input charging functionality. And then further go on to describe, you know, whether a charging source would be commonplace, but charging source is not found in the claim. And then finally, there's a question about, you know, about the last sentence that was there, and that's the entirety of the analysis, is whether a person of ordinary skill in the art would have difficulty in locating a suitable source, or how common a USB port is as a use of a power input to devices. So this is not really addressing the evidence, but it's asking that was presented and whether a prima facie case was made, but it's asking for other or additional evidence that instead of analyzing what was actually presented. So unless the... Was the theory in the petition that a person of skill in the art would find it obvious to use the same USB port that was already in the prior art to also be an input for charging? Or was it that the person of skill in the art would add another port to do what claim 11 adds? Both were presented, so it either could be used as an alternative or in addition to. And if it's in addition to, then the issues of disadvantages of adding a USB port are obviated, because it's another option. Do you contend that the board misunderstood that you presented, I guess you would say, both of those theories of obviousness? Among other issues, I think that's correct. And do we have to find that to be an abuse of discretion? I think it's legal error to have not addressed whether a prima facie case was established. If the board has any other... Unless the panel has any other questions, I'd like to reserve the balance of my time. We will save it. Thank you, Your Honor. With regard to Richardson, Judge Dyck, I think your questions to my friend teased out the fact that what the board did was did an obviousness analysis, not an anticipation analysis. They combined the knowledge of a person of ordinary skill with the voltage disclosure in the detecting step. There's no disclosure in Richardson of the absence of a battery in that step. My friend pointed to the portion of the final written decision where the board said that this was undisputed by the testimony of experts. The board did say that, and of course that's true, because we thought the issue was settled. That's the surprise that we had because of the board's change in construction. With regard to Klang, my friend does not dispute that the board read when as having no temporal requirement. I'll leave Klang at that. With regard to the cross appeal, Judge Stark, there was no theory whatsoever put forth in the petition. There were four bare paragraphs in the petition that were identical to their expert's declaration. It's paragraphs 118 to 21 of the petition. The theory was that if you could use the USB connection to charge a battery in a peripheral device, you could do the opposite and charge the battery in the other direction. The theory, such as it was, was that the adding a USB charging port would be quote, readily apparent, and it would provide added convenience. That's it. That's all it says. There was no theory. There was no how it would be done. It does identify the fact that USB ports are used to charge external devices. Invalidated on that ground. Now, of course, if Richardson is turned around, Richardson was the combined reference for this one. Claim 11 is reversed regardless of the cross appeal, but the point is that their two combined references don't even combine to invalidate even if you could combine them. What the board said here is that the combination here, you don't even explain how you would do this. Putting a USB port in to charge the device itself as opposed to putting a USB port in to charge other devices using the device is a very different thing. There was no explanation of how to Conclusory statements with regard to obviousness are not enough to make a prima facie case. KSR itself held that rejections on obviousness grounds cannot be sustained by mere conclusory statements. Do we decide for ourselves if those are merely conclusory statements or do we give deference to the board? I think you should give deference to the board here. The board has a rule with regard to this. The board's application of its own rule here is entitled to a certain amount of deference, but it really doesn't matter. This is as conclusory as anything I've ever seen with regard to making out a case, a prima facie case. Did the board here require in order to prove obviousness that a person with a skill in the art could add the USB port without redesign or adaptation? If the board did impose that requirement, that would be error, wouldn't it? Ask your question again. Without redesign or adaptation. I think one of the arguments is that the board raised the burden for obviousness to too great a level by requiring them to show that the USB port could do what the Claim 11 requires, but without redesign or adaptation. Well, I think the fact is that you can't just slap a USB port onto a device and have it charge that device, especially if the USB port that's being offered from the secondary reference here, from the ePower reference, is a port that is being used to do external charging. So there's really nothing there that tells you that you can add that port and charge the device itself. So I don't think that's any sort of error with regard to the board saying, gee, there's no circuitry that's disclosed in the ePower reference to tell you that, gee, you can add this and charge the device itself using this USB port. So I don't think that's any kind of error whatsoever. So unless the court has further questions for me, we'll rest on the briefs that are already given. Thank you, counsel. Mr. Cotario will give you two minutes for rebuttal on the cross field. I think the issue is, you know, there were a lot of arguments by NOCO's counsel concerning just now about circuitry or perhaps compatibility with voltage levels. That was all evidence that the board said they expressly did not consider. So the focus here really needs to be on what evidence was actually provided. The statements that were supported by expert testimony where the expert was criticized as being not an expert or not a person of ordinary skill in the art, not credible, indicated that adding a USB port would improve the convenience of the devices. And the primary references, again, Claim 10 places a requirement that a USB output port is configured... Did the experts say that using a USB port for this purpose would work? I mean, I think that was the basis of... I mean, that's really the upshot of his opinion is that this is... Did he say that explicitly? In terms of his actual final statement about this, he indicated that cell phones were an example and I mean, I think it's possible to do this, but I'm not sure if that directly answers your question. What did he say about whether it's possible to do this? He stated that adding a USB port would... Sorry, I'll just pull this back up. Because that seems to be the crux of the later dispute between the response and the reply is whether it's possible to do this. Yeah, so his opinion was that it would be readily apparent from the references that a USB port, which is simply a different physical plug and socket combination, could also be incorporated into portable jump starters in addition to or in place of the 14-volt 1N input port, which I think is what Judge Stark was asking about before. And a person of ordinary skill would be motivated to provide that to add convenience to the users of adding another commonly used power input. So I think the emphasis in the expert's opinion is this is a commonplace charging input and there's no dispute that the references disclosed were jump starter devices with a charging input. The only leap here, or if there is any, is that that input port is USB instead of a 14-volt barrel connector. Thank you, Counsel. We have both arguments and the case is submitted.